UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Karen Moore, | ) C/A No.: 2:13-3122-RMG-BM |
|         Plaintiff, | ) |
| vs. | ) |
| | ) Report and Recommendation |
| The Pendergraph Companies, | ) |
|         Defendant. | ) |

Plaintiff files this matter pursuant to 42 U.S.C. §1983 against the Pendergraph Companies (Defendants), alleging violations of federal consumer protection laws. According to the Complaint, Plaintiff was encouraged to sign a new lease contract with the Defendants even though they had knowledge of her mental condition and her inability to pay for a new lease on time by "encouraging renewal of [her] lease, [and] offering a free carpet cleaning with [the renewal]." Plaintiff alleges the Defendants "oppressed" her, and ignored her protests about "the amount [she] felt [Defendants] owed after [she] left the complex [by] putting the amount of $1044 on [her] credit." Plaintiff alleges she was harassed because she was told she would not be able to get a job with bad credit. Plaintiff further alleges the debt has been "on [her] credit [for the] last 5 years [but Defendants have] refused to remove it." Plaintiff also claims the Defendants watched her have a "nervous breakdown in their office in which the staff had to call an ambulance for [her]. [Defendants] were aware ...of late payments as well as [Plaintiff's] mental condition and still chose to encourage the renewing of [ her] lease."

After signing the lease, Plaintiff alleges that staff members of the Defendant "walked

1



through" her apartment and "documented that the apartment was left in the condition that it was found, [and] still choose to charge [her] a carpet cleaning fee." Plaintiff claims she protested but still received a bill with the words "Settlement" on it. Plaintiff alleges contract law in South Carolina requires a "signature for any change in a contract that is valued at over $500, which [she] did not sign." Plaintiff states she received a letter threatening to have the amount "put on [her] credit" and warning her of the "damage it could do to [her] employment prospects." Plaintiff alleges the letter caused her "great anxiety" for which she "needed to be treated."

Plaintiff seeks $63,000.00 in damages, claiming that but for the "blight" on her credit, she "would have been able to work at least part-time ($21,000 a year for 3 years) as an accountant or book keeper after [she] finished [her] degree in 2009." She further claims she would not have "suffered the emotional anxiety of being so blatantly disrespected...." She also seeks "any other damages that may arise concerning torts committed that would exceed the amount listed above from any other summary, actual, or punitive damages that the court finds acceptable." Finally, she seeks "any criminal charges that can be levied against this company or it's employees [to] be considered and passed on to the appropriate agency in that it was common knowledge in [Defendant's] office that [she] had a pre-cancerous condition, and that [Defendants] unwillingness to remove [the debt] led to [her] lack of employment and thus health insurance."

Plaintiff attaches to her Complaint a letter from the Berkeley Community Mental Health Center, a division of the Department of Mental Health ("DMH"), dated May 30, 2006. It states Plaintiff has been diagnosed with Schizoaffective Disorder, Prolonged Posttraumatic Stress Disorder and Psychotic Disorder NOS. She also attaches another letter from the DMH dated November 20, 2008 wherein she agrees to take her medication as directed until further notice.



**Discussion**

Under established local procedure in this judicial district, a careful review has been made of the pro se complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, and in light of the following precedents: Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); and Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). Section 1915 permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute also allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. §1915(e)(2)(B)(I), (ii). Hence, under 28 U.S.C. §1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989). Further, although this court is required to liberally construe pro se documents, Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5, 101 S. Ct. 173 (1980)*(per curiam)*, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990). Such is the case here.

In order for this Court to hear and decide a case, the Court must, first, have jurisdiction over the subject matter of the litigation. It is well settled that federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute; Willy v. Coastal Corp., 503 U.S. 131, 136-37, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); and this limited jurisdiction

3



is not to be expanded by judicial decree. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Additionally, it is to be presumed that a cause lies outside this limited jurisdiction; Turner v. Bank of N. Am., 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799); and the burden of establishing the contrary rests upon the party asserting jurisdiction, McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182-83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

The two most commonly recognized and utilized bases for federal court jurisdiction are (1) "federal question," 28 U.S.C. § 1331, and (2) "diversity of citizenship." 28 U.S.C. § 1332. The allegations contained in the Complaint filed by Plaintiff do not fall within the scope of either form of this Court's limited jurisdiction, and there is no other possible basis for federal jurisdiction evident.

First, there is no basis for a finding of diversity jurisdiction over this Complaint. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). 28 U.S.C. § 1332. Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372-74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Although Plaintiff appears to be a resident of South Carolina while Defendant appears to be a business concern located in North Carolina,[1] this Court has no diversity jurisdiction under 28 U.S.C. § 1332 over this case because Plaintiff only seeks $63,000.00 in damages. The relevant principles of the amount-in-controversy requirement, 28 U.S.C. § 1332, are

---

[1] Even though Defendant is a business or corporate entity and not a human being, it is still a "resident" of North Carolina as that term is legally understood. See Huggins v. Winn-Dixie Greenville, Inc., 233 F.Supp. 667, 669 (D.S.C. 1964).



well settled, and generally "the sum claimed by the plaintiff controls" the determination of the amount in controversy. JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010). While it is true that Plaintiff also seeks "any other damages that may arise," and both actual and punitive damages must be included in any calculation of the amount in controversy; Bell v. Preferred Life Assurance Society, 320 U.S. 238 (1948); it is not enough to simply state that because Plaintiffs seek punitive damages for some of their claims, federal jurisdiction is proper. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994) ("[T]he possibility that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now."). Furthermore, "it was never the intent of Congress for the federal courts to exercise jurisdiction over every state case in which punitive damages have been pled and the parties are of diverse citizenship." Hamilton v. Ocwen Loan Servicing, LLC, No. 9:12-cv-03111-PMD, 2013 WL 499159, at *5 (D.S.C. Feb. 7, 2013) (quoting Hagood v. Electrolux Home Prods., Inc., No. 8:06-1799-HFF, 2006 WL 1663804, at *2 (D.S.C. June 15, 2006). In sum, there is no indication that any additional amount, if due, would exceed the required jurisdictional amount, even when aggregated with Plaintiff's demand for $63,000.00, and it is the plaintiff who has the burden of proving complete diversity and the requisite amount in controversy. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Consequently, this Court lacks diversity jurisdiction over Plaintiff's Complaint.

Second, it is clear that the essential allegations contained in the Complaint are insufficient to show that the case is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. That is, the Complaint does not state a claim cognizable under this Court's "federal question" jurisdiction. Plaintiff's Complaint involves a routine breach of contract dispute. Plaintiff argues, essentially, that she agreed to sign a lease for a specific term in exchange for a free

5



carpet cleaning. According to the Plaintiff, she signed the lease but was billed for the cleaning. When she did not pay the required amount her credit was effected. Generally, such contract disputes are a matter of state law to be heard in the state courts, unless diversity of citizenship is present. See Mail Mart, Inc. v. Action Mktg. Consultants, Inc., 281 S.C. 167, 314 S.E.2d 351 (1984); Rowland v. Pruitt, 123 S.C. 244, 116 S.E. 456 (1923). Plaintiff also raises numerous purported tort issues, but these, too, are typically matters of state law to be heard in state courts, unless the requirements of the diversity statute are met.

Furthermore, although Plaintiff's allegations contain a reference to an alleged violation of a federal statute by Defendant, there are no facts evident from the face of the Complaint that reveal such a violation. When considering the issue of whether a case is one "arising under the Constitution ..." or, in other words, whether "federal question" jurisdiction is present, a federal court is not bound by the parties' characterization of a case. District courts are authorized to disregard such characterizations to avoid "unjust manipulation or avoidance of its jurisdiction." Lyon v. Centimark Corp., 805 F.Supp. 333, 334-35 (E.D.N.C.1992); see Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); cf. Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."); Bonner v. Circuit Ct. of St. Louis, 526 F.2d 1331, 1336 (8th Cir.1975) (federal constitutional claims are cognizable in both state courts and in federal courts: "Congress and the federal courts have consistently recognized that federal courts should permit state courts to try state cases, and that, where constitutional issues arise, state court judges are fully competent to handle them subject to Supreme Court review.").

Plaintiff also refers to "15 USCS § 15:70 and 15 USCS §1692d" in her Complaint as a basis



for this Court's jurisdiction. The former code provision offered by the Plaintiff has been typed incorrectly and efforts to determine what the appropriate provision might be have been futile. The other code section cited by the Plaintiff states, in part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> >
> > (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> >
> > (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> >
> > (4) The advertisement for sale of any debt to coerce payment of the debt.
> >
> > (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> >
> > (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d

> The term "debt collector" is defined as:
>
> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

7



> For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include– ...
>
>> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C.A. § 1692a(6); 15 U.S.C.A. § 1692a(6)(F).

The Defendant named in this matter is not a debt collector as that term is defined in the statute cited by the Plaintiff. Plaintiff does not allege that the Defendant has used interstate commerce or the mails to collect the debt allegedly due. Plaintiff has also not established that the Defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Additionally, the Defendant appears to be exempt from the definition of "debt collector" under subsection (F) of the statute because the amount allegedly owed "(ii) concerns a debt which was originated by such person[.]"

Finally, to the extent Plaintiff may be intending to assert a federal constitutional claim, purely private conduct such as that alleged in this case, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Fourteenth Amendment, the two most common provisions under which persons come into federal court to claim that others have violated their constitutional rights. See <u>Lugar v. Edmondson Oil Co.,</u> 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); <u>Burton v. Wilmington Parking Auth</u>., 365 U.S. 715, 721, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In any event, as stated above, Plaintiff does not cite to either 42 U.S.C. § 1983



or the Fourteenth Amendment in her Complaint, nor does she claim that the Defendant, a private business, violated her constitutional rights. Even if she had included such allegations, however, they would not establish "federal question" jurisdiction over this case because there are no additional allegations of "state action" in connection with the breach of contract of which Plaintiff complains. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); see Hall v. Quillen, 631 F.2d 1154, 1155-56 & nn. 2-3 (4th Cir.1980); see, e.g., Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); Lugar v. Edmondson Oil Co., 457 U.S. at 937; see U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO, 941 F.2d 1292 (2d Cir.1991).

## RECOMMENDATION

In the absence of either diversity or federal question jurisdiction over the parties' dispute, this case should be summarily dismissed without issuance of process for Defendant. Accordingly, it is recommended that the Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process because this Court lacks subject matter jurisdiction over the dispute. It is further recommended that Plaintiff's pending motion for a preliminary injunction (ECF No. 5) be terminated as moot.

February 10, 2014                    Bristow Marchant
Charleston, South Carolina           United States Magistrate Judge

***Plaintiff's attention is directed to the important notice on the next page.***



9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

